IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 09-043-SLR |
| | ) | |
| PAUL E. PAVULAK, | ) | |
| | ) | |
| Defendant. | ) | |

---

Charles M. Oberly, III, United States Attorney and Edward J. McAndrew, Assistant United States Attorney. United States Attorney's Office, District of Delaware. Bonnie L. Kane, Trial Attorney, United States Department of Justice, Criminal Section. Attorneys for Plaintiff United States of America.

Luis A. Ortiz, Esquire, Assistant Federal Public Defender. Federal Public Defender's Office, District of Delaware. Attorney for Defendant Paul E. Pavulak.

---

**MEMORANDUM OPINION**

September 13, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. BACKGROUND

A federal grand jury returned a five-count indictment against defendant Paul E. Pavulak on April 16, 2009. (D.I. 13) Count one charged defendant with failure to update sex offender registration, in violation of 18 U.S.C. § 2250(a). Count two charged defendant with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B). Count three charged defendant with the attempted production of child pornography, in violation of 18 U.S.C. § 2251(a). Count four charged defendant with an attempt to entice a minor to commit a prohibited act, in violation of 18 U.S.C. § 2422(b). Count five charged defendant with commission of a sex offense by a person required to register, in violation of 18 U.S.C. § 2260A.

Defendant entered a plea of not guilty and, subsequently, moved to dismiss count one of the indictment on the ground that both the civil registration statute, 42 U.S.C. § 16913, and the criminal statute, 18 U.S.C. § 2250(a), exceed Congressional authority under the Commerce Clause, U.S. Const. art. I § 8, cl. 3. (D.I. 21) Contemporaneously, defendant moved to suppress evidence obtained as a result of two state court search warrants. (D.I. 20) Defendant asserted that the information provided in the search warrant affidavits was: (1) insufficient to establish probable cause; and (2) materially false and made knowingly with reckless disregard for the truth. (D.I. 29) He requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

On November 30, 2009, the court denied defendant's motion to dismiss, finding that neither the civil nor criminal statutes exceed Congressional authority under the

Commerce Clause. (D.I. 29) Defendant's motion to suppress was also denied, the court finding that there was a substantial basis for finding probable cause based on the affidavits and, alternatively, that it was objectively reasonable for law enforcement officers to rely on the issuing judge's determination that probable cause existed. To that end, defendant had not demonstrated a "substantial preliminary showing of intentional or reckless falsity on the part of the affiant" to warrant a *Franks* hearing.

A six-day jury trial commenced on September 20, 2010. (D.I. 64) On September 27, 2010, a jury returned a verdict of guilty on each of the five counts. (D.I. 73) Defendant subsequently moved for judgment of acquittal and new trial pursuant to Fed. R. Crim. P. 29 and 33. (D.I. 93) The matter is fully briefed. (D.I. 94, 96-106, 111, 112) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion is denied.

## II. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

In considering a motion for judgment of acquittal made pursuant to Fed. R. Crim. P. 29, the court must review the record in the light most favorable to the government to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). "When sufficiency of the evidence at trial is challenged, the court must affirm if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt and if the verdict is supported by substantial evidence." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).

3

In considering the evidence, the court is not tasked with deciding what it would conclude had it been the finder of fact but, rather, the focus is limited to determining whether the conclusion chosen by the jury was permissible. *Id.* Courts must be ever vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury. *Brodie,* 403 F.3d at 133. The court must consider the record as a whole and all reasonable inferences must be drawn and all credibility issues resolved in the government's favor. *United States v. Scanzello,* 832 F.2d 18, 21 (3d Cir. 1987). The defendant challenging the sufficiency of evidence bears a heavy burden. *United States v. Casper,* 956 F.2d 416, 421 (3d Cir. 1992).

### B. Motion for New Trial

Pursuant to Fed. R. Crim. P. 33, a court may grant a defendant's motion for new trial if mandated by the interests of justice. *United States v. Brennan,* 326 F.3d 176, 189 (3d Cir. 2003). A court may order a new trial where the "jury's verdict is contrary to the weight of the evidence only if the court believes that there is a serious danger of a miscarriage of justice, that is, an innocent person has been convicted." *Id.* Unlike an insufficiency of the evidence claim, a court considering a Rule 33 motion exercises its own judgment in assessing the case against the defendant and the decision to grant a new trial is vested within the court's sound discretion. *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002). Motions for a new trial based on the weight of the evidence are not favored and should be granted only in exceptional cases. *Government of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir.1987).

4

## III. DISCUSSION

### A. Count One: Failure to Update Registration

Defendant asserts that the evidence at trial established that he registered with the Delaware Sex Offender Registry, but did not "keep his registration current" when he failed to inform state registration authorities that: (1) he was employed at the family business, Concrete Technologies, Inc. ("CTI"); and (2) he maintained living quarters at CTI. (D.I. 93) He argues that this failure to "keep his registration current" does not constitute a criminal offense because the charging statute, 28 U.S.C. § 2250(a), penalizes the sex offender who knowingly fails to "update registration." Defendant urges the court to find that Congress' choice of different wording ("update a registration" in § 2250(a) rather than the wording "keep the registration current" as in 42 U.S.C. § 16913(a)), reflects Congressional intent to criminalize different conduct.

In response, the government asserts that defendant's semantic argument lacks legal support and distorts the purpose and practical application of the sex offender registry legislation. The court agrees.

On July 27, 2006, Congress enacted The Sex Offender Notification Act ("SORNA"),[1] as part of The Adam Walsh Child Protection and Safety Act ("the Act"). *United States v. Howell*, 552 F.3d 709, 713 (8th Cir. 2009). The Act was designed to "close the loopholes in previous sex offender registration legislation and to standardize registration across the states." *United States v. Shenandoah*, 595 F.3d 151, 154 (3d

---

[1]SORNA has two components, the civil statute at 42 U.S.C. §16913, et seq. (establishes registration requirements) and the criminal statute at 18 U.S.C. §2250, et seq. (establishes federal crime for failure to comply with registration requirements).

Cir. 2010). In so doing, Congress recognized that "sex offenders[2] constitute a unique class of criminal insofar as members of that class are considered to have higher rates of recidivism than other offenders." *United States v. Gould*, 568 F.3d 459, 472 (4th Cir. 2009). Congress also sought to address the "extensive interstate movement of recidivist [sex offenders] seeking to avoid state-created registration requirements." *Id.* at 473.

As a result, SORNA creates a "national sex offender registry with the goal of eliminating inconsistencies among state laws." *Id.* SORNA establishes requirements for sex offenders who must initially register and for sex offenders who are already registered but are required to update their registration. *Id.*

Specifically,

> a sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such is different from the jurisdiction of residence.

42 U.S.C. § 16913(a).

In order to keep the registration current,

> a sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

---

[2]A sex offender is an individual convicted of a "sex offense," which includes "a criminal offense that has an element involving a sexual act or sexual contact with another." 42 U.S.C. § 16911(1), (5)(A)(i). "SORNA applies to a broadly-defined class of sex offenders." *Shenandoah*, 595 F.3d at 154.

42 U.S.C. §16913(c).

A sex offender must provide certain information to the pertinent sex offender registry, including: (1) the address of each residence at which the sex offender resides[3] or will reside; and (2) the name and address of any place where the sex offender is an employee[4] or will be an employee. 42 U.S.C. § 16914(a).

SORNA creates "criminal penalties for failing to comply with its registration requirements." *Shenandoah,* 595 F.3d at 155. Specifically, section 2250(a) provides:

> Whoever-
> (1) is required to register under SORNA;
> (2)(A) is a sex offender as defined for the purposes of the SORNA by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by SORNA;
> shall be fined under this title or imprisoned not more than 10 years, or both.

SORNA directs the United States Attorney General to "maintain a national database . . . for each offender." 42 U.S.C. § 16919(a).

The record at trial established that defendant was subject to SORNA's registration requirements because he was convicted of qualifying sex offenses in 1998 and 2005 in the Superior Court of Delaware. (D.I. 78, exs.1-4, 289) In July 2008, defendant completed a sex offender registration form at the Delaware State Bureau of

---

[3]The "location of the individual's home or other place where the individual habitually lives." 42 U.S.C. § 16911(13).

[4]An "individual who is self-employed or works for any other entity, whether compensated or not." 42 U.S.C. § 16911(12).

Investigation wherein he certified his residence as the Fairview Inn, New Castle, Delaware. (Id., exs. 18-19; D.I. 83 at 22-23) Although defendant admits that, during the period charged in the indictment, he maintained a living quarters at CTI and was employed by CTI, he failed to provide this information to the Delaware Sex Offender Registry. (D.I. 78, exs. 8-19; D.I. 83 26-32; D.I. 93 at ¶¶ 8-9) Instead, the record reflects that, on multiple occasions, while updating his registration, defendant only noted a change of residence - from one motel to another- and did not complete questions about employment. (D.I. 78, exs. 9, 11,13-15,17,19)

Moreover, the record reflects that defendant listed CTI as his place of residence on his Delaware driver's license. (D.I. 78, ex. 20) CTI employees testified that defendant worked at CTI in the summer and fall of 2008. (D.I. 93 at 56-58, 253-254, 275-277) Defendant sent emails regarding CTI projects to his children from October to December 2008. (D.I. 78, exs. 61, 101-02, 107-08, 149, 150A, 152A, 153A) During an on-line conversation in October 2008, defendant described himself as owner of a concrete company and as a construction worker. (D.I. 78, ex. 175)

Considering this evidence in the light most favorable to the government, the court finds that sufficient evidence has been adduced upon which a rational trier of fact could find that all of the elements of 28 U.S.C. § 2250(a) have been proven beyond a reasonable doubt.

With respect to defendant's argument that the differences in the choice of wording between the civil statute and the criminal statute create a statutory gap that essentially relieved him of his obligation to disclose to the Sex Offender Registry that he was working and residing at CTI, the court declines to interpret the statutory language

in that manner. Significantly, there is no authority to support this construction. Rather, courts considering the legislation have assigned the same meaning for the two phrases. *See, e.g., Shenandoah*, 595 F.3d at 154; *United States v. VanBuren*, 599 F.3d 170 (2d Cir. 2010); *United States v. Heth*, 596 F.3d 255, 258 (5th Cir. 2010); *United States v. Keleher*, 1:07-cr-003320OWW, 2008 WL 5054116, at *16 (E.D. Cal. Nov. 19, 2008).

## B. Count Two: Knowing Possession of Child Pornography

### 1. Insufficient evidence

Defendant argues that there was insufficient evidence to prove that he knowingly possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Specifically, he contends that: (1) no witness testified of actually observing defendant viewing images of child pornography; (2) there was no evidence that he had exclusive access to the computers; (3) there was no evidence presented that defendant searched for or downloaded child pornography or that he used or owned an external media device; and (4) the evidence was insufficient to prove that defendant was the person who knowingly possessed the child pornography. *United States v. Dobbs*, 629 F. 3d 1199 (10th Cir. 2011).

In order to convict defendant of possession of child pornography,[5] the

---

[5]The jury instructions, to which neither party objected, instructed the jury that in order to find defendant guilty of possession of child pornography, the government had to prove, beyond a reasonable doubt, that:

> 1. Defendant knowingly possessed any material, such as a computer memory card or disk;
> 2. The material contained, and defendant knew it contained, at least one image of child pornography; and
> 3. The image of child pornography had been either: (a) mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or (b) produced using materials that

government had to prove, beyond a reasonable doubt, that defendant knowingly possessed some material, such as a computer hard drive, that contained, and that defendant knew it contained, at least one visual depiction of child pornography. 18 U.S.C. § 2252A(a)(5)(B). The government had to also prove, beyond a reasonable doubt, that either the visual depiction or the material containing it moved in interstate or foreign commerce.

At trial, it was established that approximately 5,717 files containing child pornography were found on a desktop and a laptop computer at the CTI office.[6] The government's computer forensic expert, Delaware State Police Detective Michael Willey, testified that defendant had access to and used the laptop computer, which had only one Windows user account that was password protected. (D.I. 79 at 48, 74, 113) The laptop contained approximately 2,782 thumbnail-sized images of child pornography that were located in the system's database files. (D.I. 79 at 107-109; D.I. 78, exs. 261-269) There was a webcam integrated into the monitor board on the laptop. (D.I. 79 at 135) The laptop had a software utility installed that would allow a user to view a webcam image coming into the computer. (Id. at 89) Defendant identified the laptop as his computer in emails exchanged with his son. (D.I. 78, ex. 144A) Although

---

had been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

(D.I. 69 at 32)

[6]The parties stipulated that the images located on both computers constituted child pornography. (D.I. 78, ex. 291)

10

defendant's son maintained a computer at the CTI office, no images of child pornography were found on it. (D.I. 79 at 57-58; D.I. 78, exs. 37-38, 206)

Further, the laptop contained files containing child pornography that had been saved in Windows Photo Gallery, a default operating system program that permits users to view and edit digital images. (D.I. 79 at 63-64) The child pornography images were edited on six different dates between September 13, 2008 and November 22, 2008, during weekend and evening hours. (Id. at 62-85; D.I. 78, exs. 240-244) None of the child pornography images were created or viewed while defendant was in the Philippines. (D.I. 79 at 62-70, 71-82, 91-101, 178-179; D.I. 78, exs. 209-38; 240-44, 246-254, 295)

Forensic evidence established that defendant used his Yahoo account, username "pavy224," on the laptop to chat[7] with Ana Duran ("Duran").[8] (D.I. 79 at 110-

---

[7]Willey defined "chat" as internet communications where a program, in this instance Yahoo Instant Messenger, "allows a user to chat with another user somewhere else." (D.I. 79 at 110-111)

[8]At trial, the evidence established that, in late August 2008, defendant emailed Duran, a resident of Cebu, Philippines, after viewing her profile on the "cherryblossoms.com" website. (D.I. 78, exs. 198-201, 131-132) Upon learning that Duran had a young female child ("Jane Doe"), defendant sent emails inquiring about Jane Doe and requesting photographs. (Id., ex. 133) Jane Doe was approximately two years old. (D.I. 80 at 93-104) Jane Doe lived with her mother, Duran, and their extended family in a jungle hut located in a banana plantation, at the southern tip of Cebu. (Id. at 90-96; D.I. 78, exs. 118-119) The hut had electricity and internet service but lacked running water and indoor plumbing. (D.I. 80 at 99) For the next two months, defendant and Duran carried on an online relationship, during which time Duran sent defendant two photos of Jane Doe and one of herself, and defendant sent money to Duran. (D.I. 78, exs. 135A, 115A, 136) While on a trip to the Philippines, defendant stayed with Duran and Jane Doe in a hotel room. (Id., exs. 70-71, 292) During this time, defendant took photos of himself, Duran and Jane Doe. (Id., exs. 197-202, 279-281) Some of the photos depict Duran and/or defendant nude or engaging in sexual activity. (Id., exs. 257, 258. 259A, 279) Some photos show Jane Doe's pubic area

11

115; D.I. 78, exs. 271-275) Sexually explicit videos of Duran and defendant were found on the laptop, as well as other images of defendant, Duran and Jane Doe. Some of the videos were taken with a digital camera found in the rear CTI office where defendant stayed. (D.I. 78, exs. 65, 246-57; D.I. 79 at 103-106; 133-135)

The desktop computer contained approximately 2,904 images of child pornography. (D.I. 80 at 200-02, 210-11; D.I. 78, ex. 190) Forensic examinations revealed that these images were modified during a period in which defendant had access to the desktop computer. (D.I. 79 at 35-37; D.I. 78, ex. 196)

At trial, there was testimony by two witnesses who observed defendant viewing explicit images. (D.I. 83 at 260, 275) One witness, Curtis Mack, testified that he observed defendant viewing sexual images of girls who looked younger than 18 years of age. (*Id.* at 260) Mack also observed defendant being in online chat rooms with girls. (*Id.* at 261) The other, Jahdel Riggs, testified of observing defendant viewing images of young girls and of being on the cherryblossom.com website. (*Id.* at 279-280)

Considering this evidence in the light most favorable to the government, the court finds that sufficient evidence has been presented upon which the jury could find defendant guilty of count two. To that end, the government was not required to prove that defendant had exclusive or sole access to the computers that contained the child

---

exposed or loosely covered. (*Id.*, exs. 199-200) Defendant also recorded videos of him and Duran engaged in sex acts. (*Id.*, exs. 258, 259, 283) In one such video, defendant states that "[t]his will be Jane Doe's training video. You show her how to do it." (*Id.*, ex. 283)

pornography images.  As the jury was instructed, possession can be joint or constructive and does not have to be sole or exclusive.  (D.I. 69 at 39)

### 2. Jurisdictional Nexus Element

Defendant asserts that the plain language of § 2252A(a)(5)(B) required the government to prove both that:  (1) the possessed images of child pornography had been shipped or transported in interstate or foreign commerce; and (2) these images were produced using materials that had been shipped or transported interstate or foreign commerce.  Without such proof, the jurisdictional nexus element is not satisfied.

Defendant's argument is not supported by a plain reading of § 2252A(a)(5)(B), which lists three alternate ways in which to prove the jurisdictional element. Importantly, the three ways to prove the jurisdictional element are separated by "or." The Third Circuit has clarified that when the term "or" is used, it is presumed to be in the disjunctive sense unless the legislative intent is clearly to the contrary. *United States v. Rigas*, 605 F.3d 194, 208 (3d Cir. 2010).

Moreover, defendant's Commerce Clause challenge to his conviction on this count is unavailing considering that the Third Circuit has upheld the constitutionality of similar child pornography statutes that contain the same interstate commerce element. *United States v. Rodia,* 194 F.3d 465 (3d Cir. 1999).

### C. Count Three:  Attempted Production of Child Pornography and Count Four:  Attempted Coercion and Enticement of a Minor

Counts three and four of the indictment charge defendant with "attempt" crimes. In order to prove an attempt crime, the government must show that defendant acted with the specific intent to commit the completed offense and took a substantial step

13

toward doing so. *United States v. Nestor*, 574 F.3d 159, 161-62 (3d Cir. 2009).

Count three charges defendant with attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). The completed offense of production of child pornography requires the government to prove that defendant "employ[ed], use[d], persuade[d], induce[d], entice[d], and coerce[d] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." 18 U.S.C. § 2251(a). The visual depiction or the materials used to produce it must also have traveled in interstate or foreign commerce. *Id.*

Count four charges defendant with attempted enticement and coercion of a minor, in violation of 18 U.S.C. § 2422(b).[9] The completed offense requires the government to prove that defendant used a facility of interstate or foreign commerce knowingly to persuade, induce, entice or coerce a minor to engage "in prostitution or any sexual activity for which any person can be charged with a criminal offense. . . ." 18 U.S.C. § 2422(b).

Defendant avers that there was insufficient evidence to prove he acted with the "purpose" of producing child pornography or that he took a "substantial step" toward producing child pornography. With respect to count four, defendant asserts the

---

[9]This count charged defendant with using the internet to persuade, induce, entice, and coerce, and attempt to do so, an individual who has not attained the age of 18 years, to engage in prostitution and any sexual activity for which the defendant can be charged with a criminal offense; that is, attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), and rape, in violation of the Revised Penal Code of the Philippines, Article 266-A; and Corruption of Minors, in violation of the Revised Penal Code of the Philippines, Article 340, all in violation of 18 U.S.C. § 2422(b). (D.I. 13 at 3) Defendant did not object to references to Philippine law during the trial. (D.I. 81 at 115-117)

evidence did not establish that he intended to cause assent on the part of the minor. Rather, the evidence shows defendant's intent to have Duran position Jane Doe so that the child's pubic area would appear on the computer video camera. (D.I. 93 at 13)

The record reflects that, in August 2008, defendant created a Yahoo email account and a profile[10] with the website "cherryblossoms.com."[11] (D.I. 80 at 14-16; D.I. 78, exs. 186, 129A, 129B, 130B) Soon after, defendant exchanged emails and chat messages in search of online sex and to set up sexual rendezvous for a scheduled trip to the Philippines. (D.I. 78, exs. 175-185) Defendant emailed Duran[12] on August 26, 2008. (D.I. 80 at 27-35; D.I. 78, ex. 133) He asked Duran whether her child was male or female and sought to meet her and her child during his December trip to the

---

[10]In defendant's cherryblossom.com profile he describes the type of woman he is seeking:

> Are you an open minded type of girl that agrees that adult relations and the passion of making love don't have to wait until marriage? If you are then I will be making several visits to the Philippines to come visit and get to know you? I am not looking for a house keeper. I want a lover and a girlfriend to be my partner and to enjoy my life with. The ideal girl would be extremely passionate, outgoing, adventurous, not conservative, and knows that she wants to be in a romantic and sensual relationship. If you are that girl send me an email [ ] so we can get to know each other. If you are not ready to become my lover immediately then please don't answer this profile. I don't have time to waste on a high school holding hands kissing on the cheek relationship.

(D.I. 78, ex. 186)

[11]According to United States Immigration and Customs Enforcement Special Agent Patrick McCall, the website "cherryblossoms.com" is an adult dating website that includes a broad spectrum of people of all ages, but does not allow anyone under 18 years of age to participate. (D.I. 80 at 66) United States Immigration and Customs Enforcement Criminal Investigator Darreyl Tonne described cherryblossom.com as a popular, free internet site for people to meet, including people coming to the Philippines for sex. (Id. at 86-87)

[12]Her Yahoo mail name was "Shahara_babes@yahoo.com." (D.I. 80 at 20)

Philippines. (D.I. 80 at 28-29)

Defendant's communication with Duran continued throughout September,
October and November. (*Id.* at 28-32) During their conversations, defendant advised
that he was looking for a woman with a child who was sexually aggressive and open
and willing to participate in different sexual "possibilities." (*Id.* at 30-32) Duran
responded positively and wrote that she had purchased "panties" for herself and her
child in preparation for their planned meeting. (*Id.* at 32-33)

In October, Duran emailed a picture of herself and two pictures of Jane Doe to
defendant. (D.I. 78, ex. 134) Defendant responded by sending Duran $100 and setting
the location for the meeting. (D.I. 78, exs. 135A, 115A) In response, Duran emailed
more photos of herself and Jane Doe. (D.I. 78, ex. 136)

By December, defendant had reserved a hotel room for his visit with Duran and
Jane Doe. (D.I. 78, ex. 141) Defendant's first choice of a room was with a king size
bed where all three would "fit fine." (*Id.*) He also transmitted three additional $100
payments to Duran. (*Id.*, ex. 115A)

From December 16 to 28, 2008, defendant visited Duran and Jane Doe in Cebu
City, Philippines. (*Id.*, exs. 70-71, 292) During this time, defendant engaged in and
recorded numerous sexual acts with Duran. (D.I. 79 at 134-135; D.I. 78, exs. 197-202,
257, 258A, 259, 259A, 279-83) In one such recording of Duran performing oral sex on
him, defendant identifies this as Jane Doe's "training video" from which Duran can
teach Jane Doe "how to do it." (D.I. 78, exs. 283-284) Defendant also recorded
himself, naked, standing very close to Jane Doe. (*Id.*, ex. 71) Before leaving the

16

Philippines, defendant gave Duran his Gateway laptop with Logitech webcam software and various sex toys. (D.I. 83 at 300)

Following his return to the United States on January 13, 2009, defendant sent text messages to Duran reflecting his plans to: (1) produce sexually explicit images of Jane Doe via a webcam; (2) molest Jane Doe; and (3) engage in hardcore sex acts with Jane Doe during defendant's next visit to the Philippines. (*Id.*, ex. 288; D.I. 79 at 136-146)

On January 18, 2009, during a webcam chat, Duran told defendant that Jane Doe had begun using a sex toy. In reply, defendant encouraged Duran to continue abusing Jane Doe and explained how he planned to sexually abuse Jane Doe on his next visit. (D.I. 78, ex. 275) Defendant told Duran to display Jane Doe's genitals on the webcam. (Id.)

Considering this evidence in the light most favorable to the government, the court finds that sufficient evidence has been presented upon which the jury could find defendant guilty of counts three and four. Further, because defendant was charged with attempt to produce child pornography and attempted enticement or coercion of a minor, the government was not required to prove the underlying elements of the completed offenses. The jury instructions explained the distinction between an attempted and completed offense. (D.I. 69 at 42 – 50). It is presumed that the jury followed the court's instructions. *United States v. Restaino*, 405 F.2d 628, 630 (3d Cir. 1968).

### D. Count Five: 18 U.S.C. § 2260A

Count five charged defendant as follows:

17

> Whoever, being required by Federal or other law to register as a
> sex offender, commits a felony offense involving a minor under
> section 1201, 1466A, 1470, 1591, 2241, 2241, 2243, 2244, 2245,
> 2251, 2251, 2251A, 2260, 2421, 2421, 2422, 2423, or 2425, shall
> be sentenced to a term of imprisonment of 10 years in addition to
> the imprisonment imposed for the offense under that provision.
> The sentence imposed under this section shall be consecutive to
> any sentence imposed for the offense under that provision.

The evidence at trial established that defendant had a duty to register as a sex

offender. The court has found that the evidence supported the jury's verdict on counts

three and four in the indictment. Accordingly, there was sufficient evidence for the jury

to find defendant guilty of this count.

### E. Motion for New Trial

Defendant moves for a new trial on the grounds that certain testimony

undermines the court's November 30, 2009 decision denying his motion to suppress.[13]

Particularly, defendant submits there were material inconsistencies between the factual

averments contained in the search warrant affidavits and the trial testimony of Curtis

Mack and Jahdel Riggs.

In considering the search warrant affidavits, the court credited the information

that a tipster gave police with regard to: (1) the tipster's observation of defendant

viewing child pornography at CTI; (2) the tipster's observation of defendant viewing

---

[13]As noted above, defendant moved to suppress all evidence secured by search warrants executed upon CTI and Yahoo.com on the basis that the search warrant affidavits contained false statements and that the false statements were made knowingly or with reckless disregard for the truth and that the false statements were material to the finding of probable cause. The court denied the motion (and his request for a *Franks* hearing), concluding that there was a substantial basis for finding probable cause.

pornographic images of underage girls at the 'cherryblossom.com" website; and (3)

defendant's molestation of the daughter of his Russian wife. (D.I. 29) The court then

proceeded to deny the motion to suppress as follows:

> The affidavits explained that defendant, a twice convicted sex
> offender, was observed viewing and accessing child pornography
> on a computer located at the concrete business where he worked
> and resided. These [confidential informants ("CI")] were knowledgeable
> of the concrete business and had personal interactions with defendant.
> Further, one of the investigating detectives knew the CIs and the
> information each provided was corroborated by the other or by independent
> means, to wit, CI 1 observed defendant viewing female children between
> the ages of 16 and 18 and CI 2 stated that he/she witnesse[d] defendant
> accessing pornographic images of females between the ages of 12 and 15.
> The court finds the slight difference in the ages described by the CIs
> inconsequential.
> Moreover, the information provided by CI 2 regarding defendant's
> trip to the Philippines was confirmed by the Department of State and
> Department of Homeland Security. The information regarding defendant's
> Yahoo email account was likewise corroborated by business records produced
> by Yahoo, Inc. and Verizon.
> With respect to defendant's contention that the descriptions of the
> images were insufficient to establish probable cause that defendant
> was violating state child pornography laws because there are no allegations
> of nudity, sexual contact, or lascivious exhibition of the genitals or pubic
> area, the court finds that the totality of the circumstances still provided a
> substantial basis for the judge's finding of probable cause.

(D.I. 29 at 19)

At trial, Delaware State Police Detective Nancy Skubik testified that the

averments in the search warrant affidavits were based on information that she had

obtained from Delaware State Police Detective Robert Jones. (D.I. 83 at 96) Detective

Jones testified that Erica Ballard, wife of Curtis Mack, called the Sex Offender Registry

Hotline with information about defendant. (D.I. 83 at 54-55) Detective Jones

interviewed Riggs and Mack and then relayed this information to Skubik, the author of

the affidavits.

Defense witness Karen King testified that defendant was divorced from a Russian wife and that the wife did not have any children. (D.I. 81 at 15-16) United States Immigration and Customs Enforcement Special Agent Patrick McCall testified that "cherryblossom.com" is an adult website that does not allow participation by persons under the age of 18. (D.I. 80 at 66; D.I. 83 at 295) Curtis Mack and Jahdel Riggs testified that they observed defendant viewing sexual images of girls. (D.I. 83 at 260-280)

In *Franks v. Delaware*, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to be held to examine the truthfulness of a search warrant affidavit if a defendant first makes a "substantial preliminary showing" that: (1) the affidavit contains a material misrepresentation; (2) the affiant made the misrepresentation knowingly and intentionally, or with reckless disregard for the truth; and (3) the allegedly false statement was material to the finding of probable cause. 438 U.S. at 155-56. There are several factors for the court to consider in determining whether defendant has established a "substantial preliminary showing" for a Franks hearing:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant.

*Id.* at 171; *United States v. Yusuf*, 461, F.3d 374, 383 (3d Cir. 2006).

Assuming for purposes of argument that defendant has demonstrated that the trial testimony contradicts the court's suppression decision, the motion for new trial nonetheless fails because there is no evidence that Detective Skubik (the affiant) intentionally or recklessly included in the search warrant affidavits false information concerning Mack and Riggs' report of having witnessed defendant viewing sexual images of minors on CTI computers. *Franks* requires deliberate or reckless misstatements that are not apparent on this record. The court is not convinced there is a "serious danger that a miscarriage of justice has occurred" to warrant a new trial. *Brennan*, 326 F.3d at 188-89.

## V. CONCLUSION

For the reasons stated, defendant's motions for judgment of acquittal and new trial are denied. An appropriate order shall issue.